IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JESSE C STINSON, JR,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **2:12-cv-02558-AKK** |
| **RECEIVABLES** ) | |
| **MANAGEMENT BUREAU INC,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Jesse Stinson, Jr. filed this action in the Jefferson County, Alabama Circuit Court against Receivables Management Bureau, Inc. ("RMBI") for alleged violations of state law and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. *See* docs. 1-1 at 10-12, 1-15 at 49. Prior to RMBI removing the case to this court, the Circuit Court granted partial summary judgment against Stinson. Doc. 1-13 at 24. RMBI now seeks summary judgment on Stinson's remaining invasion of privacy and FDCPA claims. Doc. 16. The motion is fully briefed and ripe for review. Docs. 20-21. For the reasons stated below, the motion is **GRANTED** with respect to the federal claims and Stinson's invasion of privacy claims are **REMANDED** back to the Circuit Court of Jefferson County.

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(c)(2) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable

inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiffs' favor when sufficient competent evidence supports Plaintiffs' version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II. FACTUAL BACKGROUND

### A. Stinson's Relationship With the Actual Debtor

The dispute in this case centers on RMBI's efforts to collect a debt from Michael Bole. Stinson became acquainted with Bole through a local church group and allowed Bole to stay with him on a few occasions. Doc. 16-1 at 62. Sometime thereafter, Bole sought treatment at St. Vincent Hospital. *Id*. at 3. On the intake

form, Bole used Stinson's address and phone number and identified Stinson as his emergency contact. *Id*. When Bole failed to pay his bill, St. Vincent's turned the account over to RMBI for collection. *Id*. at 11.

B.  **RMBI's Collection Procedures**

When a client transfers an account to RMBI for collection, the client sends RMBI the debtor's contact information. *Id*. at 8. RMBI, in turn, prescreens the telephone numbers "in an effort to make sure that [RMBI] d[oes]n't call someone that's bankrupt or deceased or that type of thing . . . [by] run[ning] [the number] through LexisNexis and different vendors to determine that the accounts are truly okay to be called on[.]" *Id*. at 16. RMBI then adds the debtor's number to a pool of numbers in its computer system. *Id*. at 8. The actual collection "calls are made by an attended dialer, which means the dialer calls the numbers." *Id*. at 7. Answered calls are passed to a live collector, but an "integrated voice response system" leaves a pre-recorded voicemail if the call is unanswered. *Id*. at 7-8.

RMBI utilizes a built in call maximum that prevents its system from calling a telephone number after a certain number of calls to that number.[1] *Id*. at 18. Additionally, RMBI maintains a strict "do not call list" on which it places anyone,

---

[1] RMBI's Fed. R. Civ. P. 30(b)(6) representative was uncertain about the maximum number in 2009 when it contacted Stinson, but testified that it was less than the current maximum – one hundred eighty one. Doc. 16-1 at 18.

including the actual debtor, who requests that RMBI not call them again. *Id*. at 25. RMBI also places numbers on the list if it learns that the number is incorrect. *Id*. However, RMBI has no way of knowing that a number is incorrect until it is so informed by the person who answers. *Id*. at 16.

## C.     RMBI's Attempt to Collect from Bole

Since Bole provided Stinson's phone number as his own on the intake form, St. Vincent provided Stinson's number to RMBI for collection. *Id*. at 3, 8. RMBI's prescreening procedure failed to uncover that Bole had provided contact information belonging instead to Stinson.[2] *Id*. at 8, 16. Accordingly, RMBI entered Stinson's phone number into the computer system and RMBI's dialer began calling. Eventually, the computer system attempted to dial Stinson's number sixty-seven times between March and September 2009, and connected thirty-seven times.[3] *Id*. at 18, 25, 35-47. However, no one answered and the integrated voice response system left voicemails each time stating

> This message is for Michael Bole . . . By continuing to listen, you are acknowledging that you are Michael Bole [pause]. This is RMBI, Incorporated, and this communication is from a debt collector. Please contact us about a personal business matter at, [RMBI's telephone

---

[2] Interestingly, a Westlaw search for Bole shows Stinson's contact information as the contact information for Bole. Doc. 16-1 at 83.

[3] Although RMBI's records do not show more than sixty-seven calls, Stinson testified that RMBI called his home about one hundred times. Doc. 16-1 at 52.

> number]. Again, this message is for Michael Bole. Please contact us about a personal business matter at, [RMBI's telephone number]. This is not a sales call. We look forward to speaking with you. Thank you.

*Id*. at 9-10. Although Stinson admits that each message was directed to Bole and that he never answered any of the calls, Stinson nonetheless describes the calls as offensive and claims they caused he and his wife emotional distress. *Id*. at 53. Incredibly, despite the purported distress, Stinson never advised RMBI that it had an incorrect telephone number or asked RMBI to cease calling. *Id*. at 52-53.

### D.   Procedural History

Stinson filed suit in the Circuit Court of Jefferson County, Alabama, initially alleging only state law claims for invasion of privacy, reckless and wanton training and supervision, and intentional infliction of emotional distress. Doc. 1-1 at 10-12. After RMBI moved for summary judgment, Stinson moved to add FDCPA and Telephone Consumer Protection Act ("TCPA") claims. Doc. 1-9 at 2-28; Doc. 1-12 at 3. The court granted RMBI summary judgment on two of Stinson's claims, but denied the motion on the invasion of privacy claim. Doc. 1-13 at 21. The court also denied Stinson's motion to amend, but subsequently granted Stinson's motion to reconsider and allowed Stinson to add two FDCPA claims. Docs.1-13 at 31-33, 1-15 at 7-15. In light of the added federal law claims, RMBI removed the case to this court. Doc. 1-1 at 10.

## III.  ANALYSIS

RMBI has moved for summary judgment and Stinson raises several arguments in opposition.  *See* docs. 16, 20.  Stinson argues first that the court should dismiss  RMBI's motion in its entirety as successive.  Doc. 20 at 6-7.  The court disagrees that the motion on the FDCPA claims is successive.  As Stinson is well aware, he moved to add those claims *after* RMBI moved for summary judgment.  Docs. 1-9 at 2-28, 1-12 at 3.  In other words, the FDCPA claims were never before the state court on a summary judgment motion.  Therefore, the claims are properly before this court on the motion for summary judgment.

As to the invasion of privacy claims, Stinson is correct that RMBI moved for summary judgment on those claims in state court.  Doc. 1-9 at 2-28.  Likewise, Stinson is correct that successive motions for summary judgment may generally be disallowed to conserve resources and maintain judicial efficiency. *Middlegate Development, LLP v. Beede*, No.10-0565-WS-C, 2011 WL 3475474 at *11 n.26 (S.D. Ala. Aug. 9, 2011) (citing *Allstate Finance Corp. v. Zimmerman*, 296 F.2d 797, 799 (5th Cir. 1961)).  However, nothing in Rule 56 prohibits the court from reviewing a second motion for summary judgment.  *See* Fed. R. Civ. P. 56 ("[A] party may file a motion for summary judgment *at any time* until 30 days after the close of all discovery.") (emphasis added).  Moreover, in this circuit, "[t]wo

motions for summary judgment may be ruled upon in the same case, particularly when discovery has been extended for good reason . . . and the district judge allows a second summary judgment motion." *Fernandez v. Bankers Nat. Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir. 1990)(citing *Allstate Fin. Corp. v. Zimmerman*, 296 F.2d 797, 799 (5th Cir. 1961).

Although the court may properly exercise its discretion and rule upon RMBI's motion, since the parties conducted no additional discovery after the removal and state courts are the preferred decision-makers on questions of state law, *Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1553 (11th Cir. 1992), the court declines to review RMBI's motion on the invasion of privacy claims. Instead, in light of its decision below to grant summary judgment on the FDCPA claims, consistent with its discretion under § 1367(c) "to dismiss a supplemental claim or party when the district court has dismissed all claims over which it has original jurisdiction," *Palmer v. Hospital Auth. of Randolph Cnty.*, 22 F.3d 1559, 1568 (11th Cir. 1994) (*quoting* 28 U.S.C. § 1367(c)), the court will remand the claims back to state court.  *See Hardy*, 954 F.2d at 1553.

A.   **The Fair Debt Collection Practices Act**

Stinson raises two claims under the FDCPA, which prohibits "abusive, deceptive, and unfair debt collection practices by . . . debt collectors." 15 U.S.C. §

8

1692. Specifically, Stinson alleges that RMBI violated §§ 1692a(2) (Count 6) and 1692d(5) (Count 5) "by conveying information regarding a debt directly or indirectly to any person[,]" and "by causing a telephone to ring repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Doc. 1-15 at 49. RMBI asserts that it is due summary judgment because Stinson lacks standing to raise FDCPA claims, its conduct does not rise to the necessary level to establish liability, and, finally, that it is entitled to the bona fide error defense. *See* doc. 20. The court addresses these arguments with respect to each applicable FDCPA section below.

    1.    <u>Count 6: § 1692a(2)</u>

Section 1692a is titled "Definitions" and subsection (2) merely provides that "[t]he term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). However, the plain language of subsection (2) does not establish that making a "communication" violates the FDCPA. Instead, this term is usually used in connection with an alleged violation of § 1692g(a), which provides that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing [certain verification information]." 15 U.S.C. § 1692g(a).

"[C]onsumer," in turn, is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

It is undisputed that Stinson was not "obligated or allegedly obligated" to pay the debt in question. Although the first voicemail RMBI left on Stinson's answering machine is considered an "initial communication," this communication was not made "with a consumer." Accordingly, RMBI cannot be held liable under § 1692a(2) or, for that matter, 1692g(a), since Stinson is not a "consumer." Alternatively, the claim fails also because, even if RMBI failed to verify the debt with Bole, the actual debtor, Stinson lacks standing to assert a claim under the FDCPA on Bole's behalf. Additionally, Stinson failed to provide evidence that RMBI made an "initial communication" **with Bole**, the "consumer," warranting verification. Accordingly, RMBI's motion with respect to Count 6 is **GRANTED**.

    2.    Count 5: § 1692d(5)

Stinson's § 1692d(5) claim fails also because, as a non-"consumer," he lacks standing to raise claims against a debt collector under FDCPA §§ 1692c-g and 1692j. *See Johnson*, 374 F. App'x at 874 (noting that 15 U.S.C. §§ 1692c-g, 1692j "protect 'consumers' from abusive debt collection practices and other deceptive actions taken by creditors."). Alternatively, the claim fails because RMBI's conduct does not rise to the requisite level necessary to establish liability

under § 1692d(5).[4]  It is undisputed that RMBI caused Stinson's phone to ring repeatedly in an attempt to collect a debt.  Therefore, the court's inquiry here is limited to whether such was done "with intent to annoy, abuse, or harass." "Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury, . . . [but] Congress has indicated its desire for the courts to structure the confines of § 1692d" and, accordingly, courts may resolve the issue as a matter of law in appropriate cases. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1169, 1179 (11th Cir. 1985) (citing S. Rep. No. 95-832, 95th Cong., 1st Sess., reprinted in 1977 U.S. Code Cong. & Ad. News 1695, 1698).

Taking the facts in the light most favorable to Stinson, RMBI called Stinson's home "approximately 100 times" between March and September 2009, left between 34 and 37 voicemails, and made clear that it was attempting to collect a debt from only Michael Bole.  Doc. 16-1 at 12, 25, 52.  It is also undisputed that

---

[4] Section 1692d(5) provides that

> [a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violating of this section:
>
> ****
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

15 U.S.C. § 1692d.

RMBI never spoke with Stinson and that Stinson never informed RMBI that it had the wrong number or asked RMBI to stop calling. *Id*. at 52-53. Instead, RMBI's computer automatically stopped calling after it made a certain number of attempts. *Id*. at 18. Since RMBI did not attempt to wrongfully collect the debt from Stinson, call at inappropriate times or an inappropriate number of times per day, or use otherwise offensive language, Stinson's claim under § 1692d is based solely on the allegedly high volume of calls. Doc. 20 at 30. A claim based solely on the number of calls is insufficient to raise a cause of action because, as courts in this circuit have generally found, a plaintiff must also show that the creditor engaged in other inappropriate conduct. *Compare, e.g.*, *McGrady v. Nissan Motor Acceptance Corp.*, 40 F. Supp. 2d 1323, 1335-36 (M.D. Ala. 1998) (denying summary judgment where the defendant "called [plaintiff] numerous times . . ., was 'very rude and abrupt' to and even yelled at Plaintiff's mother on the telephone, called Plaintiff at home and at work after being asked to not do so, called Plaintiff's employer to ask questions concerning Plaintiff's employment, and left messages stating only that 'Pam' called."), *with Tucker v. CBE Group, Inc.*, 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010) (granting summary judgment where "Defendant never even spoke to Plaintiff; Defendant was not notified that it could not reach [the debtor] at the relevant telephone number and Plaintiff did not request that

[Defendant] cease calling.").

Even taking into account Stinson's personal circumstances, *see Jeter*, 760 F.2d at 1179 (requiring the court to view a § 1692d claim from the "perspective of a consumer whose circumstances make him relatively more susceptible to harassment, oppression, or abuse"), the court finds that RMBI's conduct fails to rise to the level necessary under § 1692d to create a viable claim. Rather, where, as here, RMBI merely called and left messages for Bole at appropriate times and without knowledge that it had the wrong contact number, the court finds that Stinson failed to present sufficient evidence of RMBI's purported "intent to annoy, abuse, or harass." Based on the record before the court, it appears instead that RMBI intended only to collect a debt from Bole and instituted procedures meant to prevent annoying, abusive, or harassing conduct. Accordingly, RMBI's motion as to Count 5 is also **GRANTED**.

3. Improper Attempt to Add §§ 1692c(b) and 1692e Claims

The briefing suggests that Stinson believes he raised claims under §§ 1692c(b) and 1692e in this lawsuit. However, nowhere in Stinson's complaint does he mention these two subsections. As Stinson may know, the scope of a lawsuit is defined by the claims raised in the complaint. *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (finding that

"[e]fficiency and judicial economy require that the liberal pleading standards . . . are inapplicable after discovery has commenced" and thus a plaintiff's claims are limited to those raised in the complaint). Moreover, "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Id*. Therefore, Stinson cannot pursue claims he never plead in his complaint.

Alternatively, these claims fail also because Stinson lacks standing to bring them. First, § 1692c(b) provides that

> [w]ithout the prior consent **of the consumer** given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, **a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer**, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b). While the evidence establishes that RMBI communicated with Stinson, a third party, regarding the collection of a debt without Bole's prior permission, the court disagrees with Stinson that the definition of "communication" establishes that "any person" can recover. Doc. 20 at 28. Rather, only Bole has standing to assert a claim for this violation. As the Eleventh Circuit has indicated, this section of the FDCPA is intended to protect only "consumers" from certain creditor actions. *Johnson v. Ocwen Loan Servicing*, 374 F. App'x 868, 874 (11th Cir. 2010). Therefore, a non-consumer plaintiff "fail[s] to meet the prudential

14

requirements for standing, because []he fail[s] to show that h[is] complaint was within the 'zone of interests' protected by the statutes []he cited." *Id*. (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475 (1982)); *see also Meadows v. Franklin Collection Service, Inc.*, No. 7:09-cv-00605-LSC, 2010 WL 2605048 at *4 (N.D. Ala. June 25, 2010) (finding that a plaintiff lacks standing to bring claims against a debt collector under § 1692c if the plaintiff fails to establish that he is a "consumer"), *reversed in part on other grounds by Meadows v. Franklin Collection Service, Inc.*, 414 F. App'x 230 (11th Cir. 2011); *Frazer v. IPM Corp. of Brevard, Inc.*, 767 F. Supp. 2d 1369, 1376-77 (N.D. Ga. 2011) ("[I]f an individual bringing suit does not qualify as a consumer under 15 U.S.C. § 1692c, courts should dismiss the case for lack of standing."); *Deuel v. Santander Consumer USA, Inc.*, 700 F. Supp. 2d 1306, 1311 (S.D. Fla. 2010) (holding that a non-"consumer" plaintiff "does not have standing to maintain an action for violation of 15 U.S.C. § 1692c(b).").[5] Again, the evidence

---

[5] "Although plaintiffs generally may assert only their own legal rights and interests, a plaintiff may bring an action on behalf of a third party if: (1) the plaintiff suffered an injury in fact so as to have a sufficient concrete interest in the case; (2) the plaintiff has a close relationship to the party; and (3) the third party faces an obstacle to protecting her own interests." *Johnson*, 374 F. App'x at 873. Without regard to the first prong, Stinson cannot bring an FDCPA claim on behalf of Bole because he fails to meet the last two requirements for such standing. Specifically, Stinson himself testified that he does not have a "close relationship" with Bole – that they were mere acquaintances. *See* doc. 16-1 at 61-62. Additionally, Stinson failed to present evidence showing that Bole "faces an obstacle" that prevents him from bringing the claim himself.

presented establishes that Stinson is not a "consumer" under the FDCPA since he did not owe the debt. Therefore, he has no standing to raise a claim under § 1692c(b).

Stinson also has no standing under § 1692e, which prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e claims are analyzed by determining whether the "least sophisticated consumer" would be deceived by the creditor's conduct. *Jeter*, 760 F.2d at 1177-78. Based on the evidence presented, Stinson failed to meet this standard. Specifically, there is no evidence suggesting that RMBI's voicemails included false information or would have mislead the least sophisticated consumer into believing it was an attempt to do anything beyond collect a debt from Michael Bole. In light of the messages specifically referencing Bole, even the least sophisticated consumer would recognize that RMBI's calls were in error since they were intended for Bole.

    4.    <u>§ 1692k(c) - The Bona Fide Error Defense</u>

To the extent that the court's finding that Stinson has no standing to raise FDCPA claims is in error, RMBI is also due summary judgment based on the "bona fide error" defense, doc. 16 at 26-29, which provides that "[a] debt collector may not be held liable . . . if the debt collector shows by a preponderance of the

evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error." 15 U.S.C. § 1692k(c). "[T]he procedures component of the bona fide error defense involves a two-step inquiry." *Owen v. I.C. System, Inc.*, 629 F.3d 1263, 1273-74 (11th Cir. 2011) (*quoting Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006). First, the court must ascertain whether the defendant "actually employed or implemented[] procedures to avoid errors." *Id.* at 1274. If the answer is yes, the court must then determine "whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Id.* (*quoting Johnson*, 443 F.3d at 729). RMBI has met its burden on both steps.

    Stinson asserts that RMBI cannot establish the first step because its representative testified that RMBI had no **written** procedure in place when these events occurred. *See id.* at 15-16. This argument is unpersuasive. The FDCPA requires the debt collector to maintain procedures, but does not state that they must be in written form. *See* 15 U.S.C. § 1692k(c). In that regard, RMBI's representative testified that its computer calls the number the actual debtor provided to the client after RMBI prescreens the debtor's information through LexisNexis or a similar server. Doc. 16-1 at 8, 16. Additionally, RMBI's computer is programmed to limit the number of calls per day. *Id.* at 18. RMBI also

maintains a strict "do not call list" on which it places anyone, including the actual debtor, upon request, and voluntarily places a number on this list automatically if it discovers that it is the incorrect contact information for the actual debtor. *Id*. at 25. Based on this evidence, it is clear that RMBI had procedures in place intended to avoid errors.

Stinson asserts also that RMBI's defense fails under the second prong because its procedures are not reasonably adapted to prevent calling an incorrect number. Doc. 20 at 17. Specifically, Stinson asserts that the prescreening process is improperly used since his "counsel also searched the Lexis/Nexis records and if his telephone number . . . is inserted, Plaintiff's name and address is retrieved, not Michael Bole." *Id*. This argument is a clever way to ignore the reality that Stinson's contact information is listed as the valid contact information for Bole when a search for Michael Bole is performed on a similar database. *See* doc. 161 at 83-88. Moreover, the argument ignores the real world in which some persons (like Stinson, for example) actually allow others to live with them temporarily and to receive calls and mail at their home. For that reason, performing the search using the debtor's name, as RMBI did here, is reasonably expected to provide accurate contact information for a debtor.

Finally, Stinson asserts that RMBI's procedures are not "reasonably adapted"

because they place the onus on the third party to notify RMBI that it is using an incorrect number. The court declines to find that it is unreasonable to expect the least sophisticated consumer to answer their telephone and ask for the calls to cease or notify the caller that they have reached an incorrect number – or, in Stinson's case, to tell RMBI that Bole was only a temporary guest and no longer resided with the Stinsons. Based on the record before this court, even if RMBI had violated the FDCPA, which it did not, it is still due summary judgment based on the bona fide error defense. Accordingly, RMBI's motion is **GRANTED**.

## IV.  CONCLUSION

For the reasons stated more fully above, the court **GRANTS** RMBI's motion and **DISMISSES with prejudice** Stinson's FDCPA claims. Stinson's remaining state law invasion of privacy claims are **REMANDED** back to the Jefferson County Circuit Court for Judge Joseph Boohaker to schedule for trial or, if he is so inclined, to revisit RMBI's motion for summary judgment. Costs are taxed against Stinson.

**DONE** this 26th day of March, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE